UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br> vs.<br><br>TOBY MAGNUSON,<br>a/k/a "Scooby,"<br><br>    Defendant. | CR. 15-50095-JLV<br><br>ORDER |

## INTRODUCTION

Defendant Toby Magnuson, appearing *pro se*, filed a motion for compassionate release. (Docket 76). Pursuant to the May 1, 2020, Standing Order 20-06, the Federal Public Defender for the Districts of South Dakota and North Dakota ("FPD") and the United States Attorney for the District of South Dakota filed records, submissions and briefing on Mr. Magnuson's motion. (Dockets 79-81, 81-1 through 81-4, 82-83 and 83-1). For the reasons stated below, defendant's motion is granted.

## STANDING ORDER 20-06

Standing Order 20-06,[1] captioned "Establishing a Procedure for Compassionate Release Motions Under the First Step Act," put in place "a procedure for submission and consideration of compassionate release motions under the First Step Act, 18 U.S.C. § 3582(d)(l)(A), in the wake of the spread of

---

[1]See https://www.sdd.uscourts.gov/so2006 ("SO 20-06").

the COVID-19 virus into the federal prison system." (SO 20-06 at p. 1). Under the order, the FPD is automatically "appointed to represent all defendants in criminal cases: (a) who previously were determined to be entitled to appointment of counsel or who are now indigent; and (b) who may be eligible to seek compassionate release under the First Step Act." Id. ¶ 1. The initial step for the FPD is to

> communicate a recommendation to inmates interested in compassionate release that they immediately submit requests for compassionate release to the warden of the facility in which they are detained, if they have not done so already. These communications will include the recommendation that the prisoner describe their proposed release plan.

Id. ¶ 2.

By the standing order, "within two business days of filing all motions for compassionate release[,]" the FPD and the United States Attorney for the District of South Dakota are "to place [the defendant] into one of four categories[.]" Id. at p. 2 ¶ 4. Those categories are:

   a.   High Priority Cases where there exists some combination of: (i) medical issues that correspond to the categories outlined in the commentary to U.S.S.G. § 1.B.1.13; (ii) recognized COVID-19 risk factors in the inmate's medical history; and/or (iii) imprisonment in a federal facility known to have a serious COVID-19 outbreak in its population. . . .

   b.   Intermediate Priority Cases where identified medical issues and/or COVID-19 risk factors and/or institutional concerns are less extreme than High Priority Cases.

   c.   Low Priority Cases where there are no identifiable medical issues or COVID-19 risk factors.

      d.      Unknown Risk Cases where there is a lack of sufficient information to categorize the request for compassionate release.

Id.  The FPD and U.S. Attorney are to "immediately report the categorization . . . to the Clerk of Court and the Probation Office." Id.  The standing order contains provisions for sharing of critical information between the FPD, the U.S. Attorney, the Probation Office and the court. Id. ¶ 5.  The priority of briefing is set according to the different categories of assignment of a defendant.[2] Id. ¶¶ 6-8.

## FACTUAL BACKGROUND

The indictment charged Mr. Magnuson with attempted commercial sex trafficking of children in violation of 18 U.S.C. §§ 1591(a)(1) and 1594(a). (Docket 21 at p. 1).  As part of the plea agreement, the government agreed to permit Mr. Magnuson to plead guilty to a superseding information charging attempted trafficking in involuntary servitude or forced labor in violation of 18 U.S.C. §§ 1590(a) and 1594(a).  (Docket 41 ¶ C).  In exchange, the parties agreed to make a joint recommendation for a 72-month sentence.  Id. ¶ F.  The plea agreement avoided a 15-year mandatory minimum sentence if Mr. Magnuson had been convicted of an attempted commercial sex trafficking offense.  PSR ¶ 54.  According to Mr. Magnuson's presentence report ("PSR"), "[b]ased on a total offense level of 19 and a criminal history category of I, the

---

[2]SO 20-06 was amended on October 21, 2020, after this case was ripe for resolution.  See https://www.sdd.uscourts.gov/socraa.  The amendments have no impact on the court's analysis of this case.

guideline imprisonment range [would have been] 30 months to 37 months." (Docket 55 ¶ 53). On August 15, 2016, Mr. Magnuson was sentenced to 72 months to the custody of the United States Bureau of Prisons ("BOP") based on his conviction of attempted trafficking in involuntary servitude or forced labor. (Docket 62).

Mr. Magnuson is currently an inmate at the Allenwood Low Federal Correctional Institution "Allenwood Low" in Allenwood, Pennsylvania. (Dockets 81 at p. 2 & 82 at p. 1). Mr. Magnuson has a scheduled release date of July 16, 2021. (Dockets 81 at p. 2 & 82 at p. 1) (referencing www.bop.gov/inmateloc/ (Register No. 14656-273); see also Docket 79 at p. 798). As of September 18, 2020, Mr. Magnuson had served 74 percent of his sentence and his home detention eligibility date is January 16, 2021. (Docket 79 at p. 798). Mr. Magnuson is 49 years old. Id. at p. 797.

Mr. Magnuson's *pro se* motion seeks compassionate release on the basis of extraordinary and compelling reasons in light of his personal health during the COVID-19 pandemic. (Docket 76). Mr. Magnuson suffers from:

- Type 2 diabetes. (Docket 79 at p. 701 & 746);

- Obesity . . . [with a body mass index as of June 25, 2020, of] 37. His current weight is 229 pounds. Id. at pp. 711-12 & 746;

- Hyperlipidemia. Id. at p. 746;

- [H]ypertension. Id.;

- Depressive disorder (unspecified). Id.;

4

- Major depressive disorder.  Id.; and

- [Other physical health conditions].  Id. at pp. 746-48.

Mr. Magnuson's chronic conditions are reaffirmed throughout his medical records.  See Dockets 79-80.

Mr. Magnuson's prescription medications include metFormin HCl and insulin to treat his type 2 diabetes; Atorvastatin to treat his hyperlipidemia (high cholesterol); and Lisinopril an angiotensin-converting enzyme (ACE) inhibitor is prescribed to lower high blood pressure to prevent heart attacks and strokes.[3] (Docket 79 at pp. 756-58).

Addressing the 18 U.S.C. § 3553(a) factors, Mr. Magnuson contends that "while out on bond he complied with all conditions of release."  (Docket 81 at p. 20).  While in BOP custody, Mr. Magnuson had two disciplinary violations in 2017, and he admitted responsibility for both.  (Docket 79 at p. 795).  During his four years in custody, Mr. Magnuson completed 396 hours of educational programing.  Id. at p. 796.  Mr. Magnuson asserts today he does not "present a danger to the community in consideration of his health conditions and rehabilitation. . . . [and] is housed in a low security BOP institution."  (Docket 81 at p. 20).

Mr. Magnuson represents that if released from custody he would "reside in his hometown of New Effington, South Dakota . . . [and] would reside near his

---

[3]https://www.webmd.com/drugs/2/drug-6873-9371/lisinopril-oral/lisinopril-oral/details (last visited October 21, 2020).

mother." Id. at p. 21. Mr. Magnuson submits he "will support himself by working for Mechanical Systems Incorporated as a millwright or welder, or doing farm work." Id.; see also Dockets 76 at p. 2 & 76-1 at p. 30.

## MR. MAGNUSON'S CLASSIFICATION

On September 21, 2020, the FPD and the U.S. Attorney filed a notice of categorization of compassionate release motion. (Docket 77). They jointly "agree [Mr. Magnuson's] case should be categorized as an Intermediate Priority case." Id.

## ANALYSIS

The government opposes Mr. Magnuson's motion for compassionate release. (Docket 82). First, the government argues the defendant's medical records do not support his claim that he "is unable to provide self-care based on his obesity or . . . Type-2 diabetes." Id. at p. 6. Having said that, the government acknowledges the Department of Justice recently issued the following guideline.

> [T]he Department of Justice has determined that, during the COVID-19 pandemic, having morbid obesity, emphysema and Type 2 diabetes mellitus, which the [Centers for Disease Control and Prevention] CDC has indicated are conditions at increased risk of severe illness due to COVID-19, present "a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he . . . is not expected to recover," U.S.S.G. § 1B1.13 cmt. n.1(A)(ii)(I), in that the inmate's ability to provide self-care against serious injury or death as a result of COVID-19 is substantially diminished, within the environment of a correctional facility, by the chronic condition itself.

Id. at pp. 6-7 (referencing http://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions-people-with-medical-conditions.html). The government agrees Mr. Magnuson's health problems include "obesity, Type 2 diabetes, and essential primary hypertension[.]" Id. at p. 5. The government acknowledges "[o]besity is defined by the CDC as having a BMI of 30 or higher." Id. at p. 6 (referencing https://www.cdc.gov/coronavirus/2019-ncov/need-extraprecautions/people-with-medical-conditions.html#obesity).

While the CDC indicates primary hypertension "might cause severe risks to an individual diagnosed with COVID-19," the government argues inclusion in a " 'might' category does not warrant compassionate release, especially when controlled by medication." Id. at p. 8. Regarding Mr. Magnuson's "other conditions of chronic pain and mental illness," the government submits these conditions are not identified as creating an increased risk of serious illness from the COVID-19 virus. Id.

Addressing the § 3553(a) factors, the government argues Mr. Magnuson "would pose a danger to public safety if released." Id. at p. 10. The government submits the § 3553(a) factors were addressed at sentencing "and further reducing his sentence would not 'promote respect for the law, provide just punishment, afford adequate deterrence, protect the public from further crimes' nor 'reflect the seriousness of his offense.' " Id. (citing United States v. Brik, Case No. 15-cr-78, 2020 WL 3531576, at *6 (D. Minn. Jun. 30, 2020)). "The § 3552(a) factors disfavor a sentence reduction," in the government's view

7

because a further "reduction would not be a deterrent and would be a disparity in sentencing as to other similarly situated individuals." Id. at p. 11.

In reply, Mr. Magnuson argues:

> [He] is not presently a danger.  He is striving to address the issues that caused his behaviors which resulted in his offenses.  Further, any concern regarding danger to the community can be addressed by a period of home confinement.  In addition, the court has already placed conditions upon [him] that will mitigate any potential dangerousness.  Specifically, he will have three years of supervised release to include special conditions of participation in cognitive behavioral training and sex offender treatment. . . . He is also to submit to polygraph examinations as directed by United States Probation. . . . It also should be noted that he will need to register as a sex offender, providing an additional layer of safety to the community.

(Docket 83 at p. 3).  For these reasons, Mr. Magnuson argues "[i]t is safe to release [him] today."  Id.

Section 3582(c) permits the district court to consider a prisoner's request for compassionate release after he exhausts the administrative remedies mandated by the statute.

> [T]he court . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent

> with the applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A)(i).

The court finds Mr. Magnuson exhausted the administrative relief provision contemplated by § 3582(c)(1)(A).  Counsel for the defendant represent Mr. Magnuson submitted his request for compassionate release to the prison staff on September 22, 2020.  (Docket 81 at p. 3).  The government's brief does not challenge that statement or address administrative exhaustion.  See Docket 82.  The court finds more than 30 days lapsed since Mr. Magnuson submitted his request and, pursuant to § 3582(c), the court is free to consider his motion for compassionate relief on its merits.

"Section 3582(c)(1)(A)(i) does not attempt to define the 'extraordinary and compelling reasons' that might merit compassionate release."  United States v. McCoy, No. 20-6821, 2020 WL 7050097, at *3 (4th Cir. Dec. 2, 2020).  That task was left to the United States Sentencing Commission.  "[I]n promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) . . . [the Sentencing Commission] shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples."  28 U.S.C. § 994(t).

Prior to the First Step Act, the Sentencing Commission established four categories for "extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples."  28 U.S.C.

9

§ 994(t). Those categories generally focus on the defendant's age, medical condition, family situation and any other reasons the BOP deems to be extraordinary and compelling. U.S.S.G. § 1B1.13 cmt. n.1. The four categories have not been updated since December 2018 when the First Step Act became law.[4]

The United States Courts of Appeals for the Second, Fourth, Sixth and Seventh Circuits have addressed the court's authority under the First Step Act.[5] See United States v. Brooker, 976 F.3d 228 (2d. Cir. 2020); United States v. McCoy, 2020 WL 7050097; United States v. Jones, No. 20-3701, 2020 WL 6817488 (6th Cir. Nov. 20, 2020); and United States v. Gunn, Case No. 20-1959, 2020 WL 6813995 (7th Cir. Nov. 20, 2020).

The Second Circuit identified the question at the heart of these cases, which is "whether the First Step Act allows courts independently to determine what reasons, for purposes of compassionate release, are 'extraordinary and compelling,' or whether that power remains exclusively with the BOP Director as stated in Application Note 1(D)." Brooker, 976 F.3d at 234. The Second Circuit concluded "that, despite Application Note 1(D), the First Step Act freed district

---

[4]The United States Sentencing Commission lacks a quorum and "currently has only two voting members, two shy of the four it needs to amend the [U.S.S.G.]." United States v. Marks, 455 F. Supp. 3d 17, 24 (W.D.N.Y. 2020) (references omitted).

[5]The United States Court of Appeals for the Eighth Circuit had two clear opportunities to address this issue but declined to do so. United States v. Rodd, 966 F.3d 740 (8th Cir. July 16, 2020) and United States v. Loggins, Jr., 966 F.3d 891 (8th Cir. July 31, 2020).

10

courts to exercise their discretion in determining what are extraordinary circumstances." Id. The court held the language of U.S.S.G. § 1B1.13 "is clearly outdated and cannot be fully applicable." Id. at 235. "[T]he First Step Act freed district courts to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release. Neither Application Note 1(D), nor anything else in the now-outdated version of Guideline § 1B1.13, limits the district court's discretion." Id. at 237; see also Gunn, 2020 WL 6813995, at *2 (agreeing with the Second Circuit that the Guidelines Manual "does not curtail a district judge's discretion"); Jones, 2020 WL 6817488, at *9 ("In cases where incarcerated persons file motions for compassionate release, federal judges . . . have full discretion to define 'extraordinary and compelling' without consulting the policy statement § 1B1.13."); McCoy, 2020 WL 7050097, at *8 ("As of now, there is no Sentencing Commission policy statement 'applicable' to the defendants' compassionate-release motions, which means that district courts need not conform, under § 3582(c)(1)(A)'s consistency requirement, to § 1B1.13 in determining whether there exist 'extraordinary and compelling reasons' for a sentence reduction.").

The court retains its independent authority "to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before [the court] in motions for compassionate release." Brooker, 976 F.3d at 237. See also McCoy, 2020 WL 7050097, at *9 (same); Jones, 2020 WL

11

6817488, at *9 (same); Gunn, 2020 WL 6813995, at *2 (same). The purpose of the First Step Act was to expand the availability of compassionate release based on judicial findings of extraordinary and compelling reasons without being restricted to those categories identified by the Sentencing Commission or the rationale used by the BOP before the passage of the First Step Act.

Mr. Magnuson meets the criteria of U.S.S.G. § 1B1.13, application note 1(A)(ii). The application note in pertinent part provides: "[T]he defendant is . . . suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he . . . is not expected to recover." (U.S.S.G. § 1B1.13, note 1(A)(ii)(I); see also http://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions-people-with-medical-conditions.html (last visited December 11, 2020)).

The CDC found "adults of any age . . . are at increased risk of severe illness" from COVID-19 if they have any of the following conditions, of which Mr. Magnuson has two: "Severe Obesity" . . . and "Type 2 diabetes mellitus." https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html#obesity (bold omitted) (last visited December 11, 2020). Additionally, the CDC warns an adult like Mr. Magnuson "might be at an

12

increased risk of severe illness" because of his "[h]ypertension or high blood pressure." Id. (bold omitted).

Based on the court's detailed review of the extensive medical records, Mr. Magnuson's major health issues and risk factors are chronic, that is, medically speaking his conditions will only get worse over time. These conditions put Mr. Magnuson's life at risk.

Allenwood Low currently has 23 COVID-19 positive inmates and eight positive staff members. https://www.bop.gov/coronavirus/ (Last visited December 11, 2020). With an inmate population of 959, the facility has only completed 180 tests. Allenwood Low has only an 18.8 percent testing rate and that assumes inmates are not receiving multiple tests.

Against these findings, the court must consider if compassionate release comports with the § 3553(a) factors. In Mr. Magnuson's case, the "nature and circumstances of the offense"—attempted trafficking in involuntary servitude or forced labor—is serious. 18 U.S.C. § 3553(a)(1). "[T]he history and characteristics of the defendant," requires the court to consider the defendant as a whole person. Koon v. United States, 518 U.S. 81, 113 (1996). Other than a driving while under the influence offense at age 33 and a misdemeanor shoplifting charge at age 43, both of which ended with suspended or deferred impositions of sentence, Mr. Magnuson has no criminal history. PSR ¶¶ 25-26. Regarding the conduct which resulted in this federal conviction, at the time of sentencing Mr. Magnuson reported "it makes him physically sick when he thinks

13

about the instant offense. . . . [He] describes his actions as stupid and impulsive. He knew it was wrong, and he is disappointed with himself." Id. ¶ 11. Setting aside the parties' joint recommendation of a six-year sentence, which the court accepted, Mr. Magnuson's guideline range would have been 30 to 37 months. Id. ¶ 53.

Considering the defendant's health condition, his behavior on pretrial release, his behavior at the Pennington County jail following his guilty plea and awaiting sentencing and his behavior while incarcerated, as well as the supervised release special conditions imposed at sentencing, additional incarceration is not necessary "to protect the public from further crimes of the defendant." Id. § 3553(a)(2)(C); see also PSR ¶ 6. Mr. Magnuson's obligation to comply with the terms of supervised release would best "provide the defendant with . . . correctional treatment in the most effective manner." Id. § 3553(a)(2)(D).

Incarceration is not the only "kind[] of sentence[] available." Id. § 3553(a)(3). A noncustodial sentence will limit Mr. Magnuson's liberty interests through supervised release and he will face harsh consequences if he violates the special conditions activated upon his release from BOP custody. United States v. Gall, 374 F. Supp. 2d 758, 763 (S.D. Iowa 2005), rev'd, 446 F.3d 884 (8th Cir. 2006), rev'd, 552 U.S. 38 (2007). Those special conditions promote respect for the law, protect the public and do not constitute approval of Mr. Magnuson's criminal conduct. Id.

At this juncture, use of the First Step Act will not create "unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."  Id. § 3553(a)(6).  The court finds Mr. Magnuson will not pose a danger to the public and compassionate release is appropriate.

The court finds Mr. Magnuson met his burden of proof and presented "extraordinary and compelling reasons" warranting a sentence reduction under § 3582(c)(1)(A)(i).  The court retains the authority to reduce Mr. Magnuson's sentence to time served.  Following his release from custody, Mr. Magnuson will remain on supervised release for three years, subject to the standard conditions and the special conditions of supervised release imposed in the original sentence.  (Docket 62 at pp. 3-4).

## ORDER

Good cause having been proven, it is

ORDERED that defendant's motion for compassionate release (Docket 76) is granted.

IT IS FURTHER ORDERD that the defendant's sentence of imprisonment is reduced to time served.

IT IS FURTHER ORDERED that upon his release, Mr. Magnuson shall reside in New Effington, South Dakota.

IT IS FURTHER ORDERED that within 72 hours of release from the custody of the BOP Mr. Magnuson must report, by telephone, 605-377-2630 or

866-248-4720, to the United States Probation and Pretrial Services Office for the District of South Dakota at 102 4th Avenue SW, Suite 310, Aberdeen, South Dakota, 57401.

    IT IS FURTHER ORDERED that Mr. Magnuson shall remain on supervised release for three years, subject to the mandatory and standard conditions of supervision and the special conditions of supervision imposed in the sentence of August 15, 2016. (Docket 62 at pp. 3-4).

    IT IS FURTHER ORDERED that the United States Probation Office shall prepare an amended judgment consistent with this order.

    IT IS FURTHER ORDERED that the Clerk of Court shall deliver a copy of this order to the United States Probation Office and the United States Marshals Service.

    Dated December 11, 2020.

BY THE COURT:

/s/ *Jeffrey L. Viken*
JEFFREY L. VIKEN
UNITED STATES DISTRICT JUDGE